# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUDITH A. FLETCHER, ) <br> ) <br> Plaintiff, pro se, ) <br> ) <br> v. ) <br> ) <br> HOMECOMINGS FINANCIAL ) <br> LLC, ) <br> ) <br> Defendant. ) | **MEMORANDUM OPINION** <br> **AND RECOMMENDATION** <br><br> 1:08CV393 |

This matter is before the court on a motion to dismiss by Defendant Homecomings Financial, LLC (docket no. 26).[1] Plaintiff has responded in opposition to the motion, and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Thus, the motion to dismiss must be dealt with by way of recommendation. For the reasons set forth below, it will be recommended that the court grant Defendant's motion to dismiss.

## I. Background and Facts

Defendant Homecomings Financial, LLC is a mortgage loan servicer, which means that it collects and processes loan payments from borrowers on behalf of the owners of mortgage loans. Pro se Plaintiff Judith Fletcher was the borrower on a

---

[1] Defendant was improperly identified in Plaintiff's amended complaint as Homecomings Financial Network, Inc.

mortgage loan that was serviced by Defendant.  Plaintiff's pleadings indicate that at some point she became disabled, was unable to make her mortgage payments, and then was required to sell her home at a loss after repeated threats of foreclosure.

In her amended complaint, Plaintiff alleges that Defendant improperly assessed and collected fees that "were not allowed under the mortgage contract and not permitted by law."[2]  (Am. Compl. ¶¶ 2-4.)  Plaintiff also alleges that Defendant applied her payments to such fees rather than to the principal of her loan.  (*Id.* ¶¶ 6, 10.)  As a result, Plaintiff believes that she was overcharged by Defendant.  (*Id.* ¶¶ 2, 7.)  Plaintiff further alleges that she contacted Defendant to dispute these fees, but that "the only explanation Homecomings would give is 'these charges are correct and need[] to be paid or they will proceed with foreclosure.'"[3]  (*Id.* ¶ 5.)

Plaintiff further alleges that Homecomings made "continuous daily/hourly harassing collection calls" to try to collect the fees that had been charged to Plaintiff's account.  (*Id.* ¶ 1.)  Plaintiff claims that Defendant told her during these calls that failure to pay the fees would adversely affect her credit report, "legal action would be taken," and "additional fees would . . . be added to the loan."[4]  (*Id.*)

---

[2]  Plaintiff has not identified any specific fee that was charged by Defendant that she believes is unwarranted or any specific instance in which she alleges that Defendant misapplied her payment.

[3]  Plaintiff has not alleged any facts with regard to when she contacted Defendant, what particular fees she disputed, or why Defendant's response was not correct.

[4]  Plaintiff has not alleged any facts identifying when these telephone calls occurred, who Plaintiff spoke with, or any other details regarding the conversations.

2

Finally, Plaintiff alleges that Defendant refused to offer her a "reasonable accommodation" that would allow her to remain in her home after she became disabled despite her admission that she was unable to make the monthly payments. (*Id.* ¶¶ 14-16.) Plaintiff has not alleged any facts identifying what she believes would have been a "reasonable accommodation," other than for Defendant to allow her to modify her mortgage to reduce her monthly loan payments.

Based on the above allegations, Plaintiff's amended complaint purports to assert claims against Defendant for violations of (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; (2) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; and (3) the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.  Plaintiff also asserts a claim titled "Deceptive Assessment and Collection of Fees Misrepresentation of Amount Owed," which appears to be an attempt to state a common law claim for fraud.

## II. Standard of Review

Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995).  At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are

liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

**III. Analysis**

A. Defendant's General *Twombly* Argument

Defendant first contends that the amended complaint is defective in its entirety because Plaintiff's allegations are too vague and conclusory to put Defendant on notice of the claims being asserted against it under the *Twombly* standard. That is, Defendant contends that Plaintiff's claims are based on the vague allegations that several years ago Defendant charged her excessive fees and was unwilling to modify her loan, which she acknowledges was in default. Defendant notes that Plaintiff has not, however, alleged which particular fees she believes were impermissible or excessive, or how she believes her loan should have been

4

modified. Defendant contends that the amended complaint should therefore be dismissed under the notice pleading standard of *Twombly*.

I find that Plaintiff's allegations are sufficient under the *Twombly* standard. In other words, I do not agree with Defendant that the amended complaint is defective *in its entirety* for failing to allege sufficient facts to articulate Plaintiff's claims. I will therefore address Defendant's arguments for dismissal as to each claim on the motion to dismiss.

B.  Plaintiff's FDCPA Claim

The court first addresses Defendant's motion to dismiss Plaintiff's FDCPA claim. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, for the FDCPA to even apply to a defendant, the defendant must be a "debt collector" as that term is defined in the FDCPA. *See Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1008-09 (D. Minn. 2008); *see also Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003). The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" expressly excludes "person[s] collecting or attempting to collect any debt owed . . .

5

to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F). Therefore, a mortgage servicing company such as Defendant is statutorily exempt from liability under the FDCPA as long as the debt was not in default when it was assigned to the mortgage servicing company. *See Scott*, 326 F. Supp. 2d at 718; *Motley*, 557 F. Supp. 2d at 1009.

Here, Plaintiff specifically alleges that Defendant is a mortgage servicer. Defendant can therefore only be liable for a FDCPA violation if the loan was in default when it was transferred to Defendant. Plaintiff has expressly alleged, however, that her loan did not become delinquent until after Defendant established an escrow account for the loan. (Am. Compl. ¶¶ 4, 9.) Therefore, Plaintiff's allegations make clear that Defendant was already servicing the mortgage loan when it became delinquent. Accordingly, Defendant is not a "debt collector" within the meaning of the FDCPA, and Plaintiff's FDCPA claim fails as a matter of law.

C.  Plaintiff's RESPA Claim

Next, as to Plaintiff's purported RESPA claim against Defendant, although the amended complaint does not indicate which specific provisions of RESPA Defendant allegedly violated, the amended complaint references two sections of RESPA: Section 2605 and Section 2609. *See* 12 U.S.C. §§ 2605, 2609. First, there is no private right of action under Section 2609, which prohibits banks from requiring excessive tax and insurance escrow deposits from mortgage borrowers. *See Clayton v. Raleigh Fed. Sav. Bank*, No. 96-1696, 1997 WL 82624, at *1 (4th Cir.

6

Feb. 27, 1997); *see also Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1301 (5th Cir. 1995). Thus, to the extent that Plaintiff is attempting to allege a violation of Section 2609, that part of Plaintiff's claim should be dismissed.

As to Plaintiff's claim for a violation of Section 2605, Plaintiff fails to allege facts sufficient to state a claim upon which relief may be granted. That is, under Section 2605, if a mortgage servicing company receives a "qualified written request from the borrower . . . for information relating to the servicing of [a] loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e)(1)(A). Under Section 2605, to constitute a "qualified written request," a request must be in writing on a document other than "notice on a payment coupon or other payment medium supplied by the servicer." *Id.* § 2605(e)(1)(B). Moreover, within sixty days of receiving a qualified written request, a mortgage servicing company must either (1) make the appropriate corrections to the borrower's account or (2) provide the borrower with a written explanation of why such corrections have not been made. *Id.* § 2605(e)(2).

Here, Plaintiff alleges in the amended complaint that she sent a "[w]ritten request" to Defendant asking it to refund monies from her escrow account. (Am. Compl. ¶ 12.) Although she alleges that Defendant "disregard[ed]" her request, she further alleges that Defendant in fact did respond to her requests for information regarding her mortgage loan. According to Plaintiff, Defendant provided her with a "Summary Detail Transaction Report" for her account, *see* Pl.'s Response Br., p. 3,

and that Defendant further informed Plaintiff that the "charges [were] correct and needed to be paid or they [would] proceed with foreclosure," *see* Am. Compl. ¶ 5. Plaintiff's own allegations, therefore, show that Defendant responded to Plaintiff's request by one of the methods allowed under Section 2605(e)(2)–that is, by providing Plaintiff with a written explanation of why such corrections were not made.[5] In sum, Plaintiff's amended complaint, therefore, fails to state a claim against Defendant for a violation of Section 2605.

D. Plaintiff's FHA Claim

Next, in support of her FHA claim, Plaintiff alleges that Defendant failed to offer her a "reasonable accommodation" when she became disabled, such as by refusing to modify her loan so that she could afford the monthly payments.[6] (Am. Compl. ¶¶ 14-17.) Plaintiff appears to be proceeding under 42 U.S.C. § 3604(f)(3)(B), which makes it unlawful for a defendant to fail "to make reasonable accommodations in rules, policies, practices or services, when such

---

[5] Furthermore, and in any event, Plaintiff's allegations regarding a purported Section 2605 violation are simply not sufficient under the *Twombly* standard. That is, in support of her RESPA claim, Plaintiff merely alleges in a conclusory fashion in the amended complaint that "[w]ritten request[s] were made to [Defendant] for the refund (overpayment) of monies from my escrow account. [Defendant] disregard [sic] this request." (Am. Compl. ¶ 12.) These allegations are simply too threadbare to state a claim for a violation of Section 2605, as Plaintiff wholly fails to allege facts showing that her request for information constituted a "qualified written request" as required to trigger a lender's obligation to respond under Section 2605.

[6] In the amended complaint Plaintiff does not articulate any type of "reasonable accommodation" that Defendant allegedly should have provided, other than allowing her to modify her loan.

8

accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). As Defendant notes, this section does not, however, apply to the enforcement of mortgage loan agreements. *See Webster Bank v. Oakley*, 830 A.2d 139, 151-53, 155 (Conn. 2003); *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056 n.7, 1057 (8th Cir. 2003) (noting that 42 U.S.C. § 3604 "bars discrimination in sales and rentals, rather than loans" and stating that "[b]ecause 42 U.S.C. § 3605 does not define discrimination to include a lender's refusal to make reasonable accommodations, [the lender] was under no obligation under Section 3605 . . . to provide [a reasonable accommodation]"); *see also Eva v. Midwest Nat'l Mortgage Banc, Inc.*, 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001) (noting that "§ 3604 relates to acquiring a home, while § 3605 applies to the making or purchasing of loans").

Instead, claims of discrimination related to the enforcement of a mortgage loan agreement are governed solely by 42 U.S.C. § 3605. Section 3605 provides that it is unlawful for any "business . . . engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of . . . [a] handicap." 42 U.S.C. § 3605(a). Unlike Section 3604, Section 3605 does not require lenders to make "reasonable accommodations" for disabled borrowers. *Webster Bank*, 830 A.2d at 142 (holding that the FHA does not require a mortgage loan servicer to accommodate a disabled mortgagor's inability to make loan

9

payments due to a disability).[7] Moreover, the Fourth Circuit has noted that Sections 3604 and 3605 are mutually exclusive, and that the scope of Section 3604 is limited by Section 3605. *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423 (4th Cir. 1984) (noting that "[i]f [§ 3604] was designed to reach every discriminatory act that might conceivably affect the availability of housing, [§ 3605]'s specific prohibition of discrimination in the provision of financing would have been superfluous"). In sum, the FHA does not require Defendant to provide a reasonable accommodation to Plaintiff based on her disability, including allowing her to modify her loan payments, and Plaintiff's FHA claim therefore fails as a matter of law.[8]

---

[7] The facts of *Webster Bank* are similar to the facts here. In *Webster Bank*, a borrower became disabled and was unable to work. *Webster Bank*, 830 A.2d at 143. Consequently, she defaulted on her mortgage loan, and the lender foreclosed on her house. *Id.* at 143-44. In the foreclosure action, the borrower claimed that the lender had violated the FHA by not making a "reasonable accommodation" that would have allowed her to stay in the home. *Id.* The borrower claimed that the lender could have, among other things, modified her payment schedule to reduce her monthly payments. 830 A.2d at 156 n.26. The Connecticut Supreme Court concluded that Section 3604 did not apply to enforcement of the mortgage loan agreement because those claims were governed solely by Section 3605. *Id.* at 154-55. The court further held that because Section 3605 does not require a lender to make "reasonable accommodations" to assist disabled persons, the lender was not required to "alter [its] generally applicable terms or conditions in order to accommodate [the borrower's] disability." *Id.* at 156.

[8] In any event, by Plaintiff's own allegations, Defendant in fact allowed Plaintiff to modify her loan twice to reduce her monthly payments, and Plaintiff was still unable to make the required payments. (*See* Am. Compl. ¶ 16.)

E. Plaintiff's Remaining Claim for "Misrepresentation of an Amount Owed" or "Deceptive Assessment of Fees"

Plaintiff has also alleged a claim titled "Deceptive Assessment and Collection of Fees Misrepresentation of an Amount Owed," based on the allegation that Defendant misrepresented the amount she owed by improperly assessing and collecting fees that were either not permitted by the mortgage contract and/or were not permitted by law. (*See* Am. Compl. ¶ 3.) It appears, then, the Plaintiff is attempting to assert a state law claim for fraud. After dismissing all claims over which it has original jurisdiction, a federal court has wide discretion to decide whether to retain supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). In fact, the Supreme Court has recognized that where federal claims are dismissed early in an action, the court "has a powerful reason to choose not to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). As Plaintiff's federal claims fail to state a claim for relief, this court should decline to exercise jurisdiction over Plaintiff's remaining state law claim for fraud.[9]

**IV. Conclusion**

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Defendant's motion to dismiss (docket no. 26) and dismiss this case with prejudice

---

[9] As Defendant notes, it appears, in any event, that Plaintiff has abandoned her fraud claim because she does not address it in response to Defendant's motion to dismiss.

as to Plaintiff's purported federal claims. It is further **RECOMMENDED** that the court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and dismiss that claim without prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
April 22, 2010